# IN THE COURT OF APPEALS OF IOWA

No. 16-1491
Filed February 22, 2017

**IN RE THE MATTER OF C.D.,**
**Alleged to be Seriously Mentally Impaired,**

**C.D.,**
     Respondent-Appellant.

_____

     Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

     Respondent appeals the district court order finding she was seriously

mentally impaired.  **AFFIRMED.**

     Alexander D. Smith of Parrish Kruidenier Dunn Boles Gribble Gentry

Brown & Bergmann, L.L.P., Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Special

Assistant Attorney General, for appellee State.

     Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Respondent C.D. appeals the district court order finding she was seriously mentally impaired. We find there is clear and convincing evidence in the record to show C.D. had a mental illness, lacked sufficient judgment to make responsible decisions about her treatment, and was likely to inflict serious emotional injury on those close to her if she was allowed to remain at liberty. We affirm the decision of the district court.

## I.       Background Facts & Proceedings

On May 29, 2015, C.D.'s husband, M.D., filed an application alleging C.D. was seriously mentally impaired pursuant to Iowa Code section 229.6 (2015). In the application, M.D. stated C.D. told him she believed he and their children were actually body doubles and not her real family. She accused M.D. of leaving the parties' baby at an animal shelter for dogs to use as a toy. C.D. also felt the oldest daughter was using a secret sign language to signal other people. C.D. was refusing psychiatric treatment. M.D. stated, "I fear for the mental health of our children with her around them, especially our oldest daughter."

M.D. and C.D. have three children, ages eight, five, and two. The oldest child is in therapy to deal with problems arising from C.D.'s statements the child was not C.D.'s biological child but was instead a double. The children are the subject of Child in Need of Assistance proceedings in juvenile court due to the mother's mental health problems. C.D. believed M.D. was not her husband but was a look-alike supervisor placed in her home by the Iowa Department of Human Services (DHS) to monitor her behavior.

Dr. Adnan Iqbal diagnosed C.D. with bipolar disorder with manic and psychotic features and delusions. A magistrate determined C.D. was seriously mentally impaired, finding C.D. "is likely to inflict serious emotional injury on family members and others who are unable to avoid her." C.D. had inpatient treatment for a period of time and then, on July 14, 2015, was transferred to outpatient treatment.

On June 20, 2016, in a periodic report, Rebecca Nunn-Ryan, a psychiatric nurse practitioner who was treating C.D., stated C.D.'s condition had deteriorated because she was not taking her medication. M.D. filed a new application alleging C.D. was seriously mentally impaired. C.D. was again saying her husband and children were body doubles. M.D. noted the oldest child was in counseling because of C.D.'s statement the children were not her real, biological children but were doubles. Dr. Laura Seal, a psychiatrist, wrote a letter stating, "Due to ongoing delusions and psychotic symptoms, the patient is considered a risk to self or others." A magistrate determined C.D. was seriously mentally impaired and needed impatient treatment.

C.D. appealed to the district court, and a trial de novo was held, pursuant to section 229.21(3). Sheila Aunspach, a DHS social worker, testified C.D.'s delusions caused harm to the children's self-identity and could cause emotional injury. She stated the mother's statements could affect the children's ability to develop bonds and attachments. Aunspach testified the mental illness of a parent could be considered an adverse childhood experience, which could impact a child's emotional well-being, leading to issues such as depression,

substance abuse, and obesity. Aunspach testified she kept in contact with the oldest child's therapist, who stated the child had problems regulating her emotions. Also, the child's emotions did not match her statements. The child exhibited problems with stress, coping skills, and self-identification. The child's therapist recommended the child continue in therapy to address these issues.

Dr. James Dennert, a psychiatrist, testified C.D. had been diagnosed with delusional disorder. He stated she had no insight into her condition but was treatable. Dr. Dennert stated, "So it is my opinion that, without treatment, her delusions will continue and likely worsen and that this will present a significant danger to her children and others who come in contact with her, specifically her husband and those who can't avoid contact with her." He testified if the oldest child was having problems regulating her emotions and exhibiting adequate coping skills this could indicate serious emotional injury. He also expressed concern the child might be experiencing depression.

Nunn-Ryan testified at her last appointment with C.D., on August 1, 2016, C.D. told her as soon as C.D. found her real children she was going to take them out of state and hide them. C.D. wanted to change the children's names and not permit them to see their father. C.D. also told Nunn-Ryan she had no intention of taking medication. C.D. did not appear for her next scheduled appointment with Nunn-Ryan. Nunn-Ryan testified, "I am also concerned on how this is affecting the children having their mother believe that she is not their mother, that they are body doubles. I would think that would, you know, eventually start playing a big—a role on the children's self-esteem and psyche."

C.D. testified she did not have a mental illness, so had no need to take medication. She asked for DNA testing of the children to show they were not her biological children. She stated she loved the children, however, and expressed an interest in adopting them.

The district court entered an order finding there was clear and convincing evidence to show C.D. was seriously mentally impaired. The court found C.D. suffered from the mental illness of delusional disorder, which was treatable. The court also found C.D. was not capable of making responsible decisions about her treatment. Furthermore, the court found C.D. was "likely to inflict serious emotional injury on her family members who lack reasonable opportunity to avoid contact with [her] if she is allowed to remain at liberty without treatment." The court noted, "Mother's mental health had affected [the oldest child's] coping skills, contributes to [the child's] stress and distress levels and impacts [the child's] self-acceptance." The court additionally noted the evidence C.D. was planning to take the children out of state, hide them, and change their names. C.D. now appeals the decision of the district court.

## II.      Standard of Review

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the

evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.*

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on appeal if they are supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

## III. Merits

Iowa Code section 229.1(17) defines "seriously mentally impaired," as follows:

> "*Seriously mentally impaired*" or "*serious mental impairment*" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> *a.* Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> *b.* Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> *c.* Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

The definition of serious mental impairment has three elements. The respondent must be found to have (1) a mental illness, (2) to lack "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment," and (3) to be likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional

injury on those close to the person, or to be unable to satisfy the person's physical needs. *J.P.*, 574 N.W.2d at 343 (quoting *In re Foster*, 426 N.W.2d 374, 376-77 (Iowa 1988)).

The case before us is based on a finding there was clear and convincing evidence in the record to show C.D. was likely to inflict serious emotional injury on members of her family or others who lacked a reasonable opportunity to avoid contact with her if she was allowed to remain at liberty without treatment. *See* Iowa Code § 229.1(17)(b). The phrase "serious emotional injury" is defined as "an injury which does not necessarily exhibit any physical characteristics, but which can be recognized and diagnosed by a licensed physician or other mental health professional and which can be causally connected with the act or omission of the person who is, or is alleged to be, mentally ill." *Id.* § 229.1(16). A finding of emotional trauma is not sufficient. *J.P.*, 574 N.W.2d at 344.

The term "likely" means "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980). "This element requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *Id.* (citation omitted). The threat the patient poses must "be evidenced by a 'recent act, attempt, or threat.'" *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986).

We determine there is substantial evidence in the record to support the district court's conclusion C.D. was likely to inflict serious emotional injury on her family if she was allowed to remain at liberty without treatment. The evidence showed C.D.'s oldest child had an injury causally connected to C.D.'s statements

in front of the child to the effect the child was not her biological child, but was a body double, and M.D. was not the child's father, but was also a body double. The evidence showed the serious emotional harm the child suffered and was likely to suffer in the future, which was causally connected to the mother's statements.  *See* Iowa Code § 229.1(16).  The testimony Dr. Dennert, a psychiatrist, and Nunn-Ryan, a psychiatric nurse practitioner, showed the child's condition "can be recognized and diagnosed by a licensed physician or other mental health professional."  *See id.*

C.D. engaged in a recent overt act by threatening to take the children out of the state, hide them, and change their names, thereby keeping them from M.D. and those she believed had switched her children for body doubles.  A recent over act may be an act, attempt, or threat.  *Mohr*, 383 N.W.2d at 542. C.D.'s threatened action would likely cause the children serious emotional injury, as well as potential physical injury.

We affirm the decision of the district court finding C.D. is seriously mentally impaired.

**AFFIRMED.**